In re Mark A. CECIL, Debtor.

Kevin Gould, Plaintiff,

v.

Mark A. Cecil, Defendant.

Jeffrey S. Ulozas, Plaintiff,

v.

Mark A. Cecil, Defendant.

Francisco Gomez, Plaintiff,

v.

Mark A. Cecil, Defendant.

Michael J. Wahl, Plaintiff,

v.

Mark A. Cecil, Defendant.

Bankruptcy No. 03–75713.
Adversary Nos. 04–7045 to 04–7048.

United States Bankruptcy Court,
C.D. Illinois.

Aug. 16, 2004.

---

William A. Krajec, Springfield, IL, for debtor.

**OPINION**

LARRY L. LESSEN, Bankruptcy Judge.

These four adversaries were consolidated for trial because they contain common issues of fact and law. The four Plaintiffs were employees of Tri–Industrial Service, Inc. The Defendant, Mark Cecil, was a shareholder and officer of Tri–Industrial.

Tri–Industrial was incorporated by Mike McMillan, William Humphries, and the Defendant. Each owned one-third of the company. In December, 2001, Humphries was kicked out of the company because he had not paid taxes for eight months. McMillan, who was the president and CEO, became the chief financial officer. McMillan dealt with all of the financial matters of Tri–Industrial. The Defendant—an electrician by trade—was the operations officer. He brought his background in construction and a customer

base to the company. He served as chief operations officer and supervised the field work.

The company had projects going on in Illinois and Louisiana. The company had as many as 20 jobs going on at ten to twelve locations. Jobs ranged from $9,000 to $1.5 million. Clients included Kraft in Champaign and Tyson in Louisiana. The company had up to 90 employees. Weekly payroll for the company reached $100,000.

Paychecks for the company were prepared by an accounting firm. The Defendant either signed the paychecks or they were signed by his secretary under his authorization.

The company was often slow in paying its bills. One supplier refused to extend credit to the company because it was tired of late payments. Work for the company began to dramatically slow down in February, 2003.

The company used a factoring agent to finance its operation. The factoring fee was 5% for thirty-day accounts and rose to up to 9% depending on the age of the account. In one year, the company paid $300,000 in financing fees to its factoring agent.

Tri–Industrial went out of business in April, 2003, when the factoring agent decided that it would no longer finance the company. Paychecks were issued on the first Friday of the month. The Defendant found out on the following Monday that the factoring agent was pulling the plug. Paychecks to the Plaintiffs bounced. The Defendant did not try to cash his last weekly paycheck of $1,500 because he knew that it would not clear the bank.

The company also failed to pay the health insurance premium for its employees for March. Therefore, insurance was terminated effective February 28, 2003. Nevertheless, the company continued to withhold insurance premiums from the paychecks of its employees (including the Defendant) in March.

Plaintiff Kevin Gould worked for Tri–Industrial from January, 2002, to April, 2003, as a pipe welder and foreman. He was aware of Tri–Industrial's precarious financial condition. His supervisor, Jody Brantly, told him that things were being handled. He found out in March that his health insurance had been canceled for nonpayment, but the company continued deducting the $50 premium from his check each week. His last paycheck bounced and he worked two more weeks without pay.

Plaintiff Michael Wahl worked for Tri–Industrial as a pipe welder from January, 2002, to April, 2003. He was hired by Jody Brantly, and Brantly continued as his supervisor. He had very little contact with the Defendant. He testified that everyone knew that the company was having financial problems, but they were told in November, 2002, to stay the course and that new financing was being arranged. Health insurance premiums were deducted from his check in March, 2003, after the insurance was canceled. His last paycheck of $1,000 was not honored. He worked eight days in addition to the work which went unpaid as a result of the bad check.

Plaintiff Francisco Gomez worked for Tri–Industrial from June, 1999, to March, 2003. Like the other Plaintiffs, health insurance premiums were deducted from his paycheck after the insurance was canceled. Unlike the other Plaintiffs, none of his paychecks was dishonored. He testified that he never got his last check and that he is owed for 60 hours of work at $17.50 per hour. In addition, he is owed $800 for four pads which he made for the company.

The fourth Plaintiff, Jeffrey Ulozas, did not testify at the trial.

The Plaintiffs offer several theories in support of their assertions that the Defendant owes them debts which are nondischargeable.

■ The Plaintiffs assert that they have debts which are nondischargeable under 11 U.S.C. § 523(a)(2)(B). This theory is premised on the notion that their last checks were "statements in writing" for purposes of § 523(a)(2)(B). However, the overwhelming weight of authority holds that a check is not a statement in writing for purposes of § 523(a)(2)(B). *In re Lahiri*, 225 B.R. 582, 589–90 (Bankr.E.D.Pa. 1998); *In re Paulk*, 25 B.R. 913, 917–18 (Bankr.M.D.Ga.1982).

■ The Plaintiffs also assert that the dishonored checks constitute false representations pursuant to 11 U.S.C. § 523(a)(2)(A). The Seventh Circuit has held that knowingly passing a bad check does not constitute false pretenses or a false representation. *In re Scarlata*, 979 F.2d 521 (7th Cir.1992), *citing Williams v. U.S.*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). Moreover, there is no evidence that the Defendant knew that the checks were bad when they were written. The checks were cut on a Friday, and the financing was terminated on the following Monday. The Defendant did not know that the financing was going to be terminated when he signed the checks. At the time the checks went out, the Defendant thought that the financing would be in place to honor the checks.

■ The Plaintiffs also assert that their debts are nondischargeable under 11 U.S.C. § 523(a)(6). The Plaintiffs argue that they suffered a willful and malicious injury because the Defendant continued to pay himself a salary after he knew that the company was in financial trouble. They describe this action as a "preference" or a "fraudulent transfer", although the Defen-

dant's actions clearly do not come within the technical meaning of these terms in bankruptcy as described in 11 U.S.C. §§ 547 and 548. Neither do these actions fall within § 523(a)(6). The Plaintiffs have not cited any authority in support of their theory and the Court's independent research has failed to turn up any. The Court notes that the Defendants' last paycheck, like the last paycheck of three of the Plaintiffs, was not honored. The Plaintiffs' theory that the Defendant should not have been taking a salary from November, 2002, through March, 2003, is without merit.

■ Finally, and most importantly, the Plaintiffs have failed to establish that any debts owed to them belong to the individual Defendant. They did not work for Mark Cecil; they worked for Tri–Industrial Service, Inc. Mark Cecil signed their checks in his corporate capacity. The Plaintiffs admit that they had very little contact with the Defendant. There was no evidence which would support the piercing of the corporate veil. Because the Defendant is not personally liable to the Plaintiffs, the debts must be discharged.

For the foregoing reasons, the Complaints to Determine Dischargeability of Debt are dismissed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.